# 𝔚𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

HARDIN v. ALEXANDRIA INSURANCE CO.

JANUARY 18th, 1894.

1. INSURANCE—*New policy—Case at bar.*—Assured asked company's agent to permit removal of insured property. Agent said there were so many endorsements on old policy it would be best to cancel it and take a new one for the return premium at *pro rata* rates. Company issued a new policy expiring at an earlier day, but it was not delivered to assured. The property was burned after expiration of the new, but before that of of the old policy : HELD : The company is liable for the loss.
2. AGENTS—*Case here.*—Insurance company supplies one with all needful blanks, responds to his acts, approves of his permits to remove insured property, and pays the rent of his office ; *held,* it is bound by his doings as its agent.

Argued at Wytheville. Decided at Richmond.

Appeal from decree of circuit court of Wise county, rendered at its December term, 1892, in chancery cause wherein J. M. Hardin, the appellant, was complainant, and the Alexandria Insurance Company was defendant. The object of the suit was to compel the company to issue to the complainant a policy of insurance on a certain stock of merchandise pursuant to a contract theretofore made by the company with him, and to pay the loss thereon, amounting to $750 with interest from October 26, 1891. The court below dismissed his bill with costs against him, and he appealed. Opinion states the case.

*Bullitt & McDowell,* for appellant.

*George A. Mushback* and *Burns & Fuller,* for appellee.

FAUNTLEROY, J., delivered the opinion of the court.

The facts which appear by the record are as follow: In November, 1890, one G. W. Lovell, whose occupation was general insurance business at Big Stone Gap, Wise county, Va., went to see W. S. Reese, who told him that he wished an insurance upon his stock of liquors and bar fixtures, and asked the rate, and was told by Lovell that the rate was three per centum. Whereupon Reese instructed Lovell to write a policy for $1,000. Lovell went to his office, where he had the blank forms and instructions of the Alexandria Insurance Company, and filled in a policy, as instructed, for $750 insurance upon the stock of liquors, and for $250 insurance upon the bar fixtures, furniture, &c., and mailed it to the "Alexandria Insurance Company, Alexandria, Virginia." Lovell, in a few days, received from that company a policy covering the property with insurance of $750 on the stock of liquors and $250 on the bar fixtures, furniture, &c., in the two-story frame building, metal roof, on Wyandotte avenue, Big Stone Gap, Va., for one year from 12 M. November 25, 1890, to 12 M. November 25, 1891. This policy he delivered to the insured W. S. Reese, and recieved from him the premium of $30 for the Alexandria Insurance Company. On the 2d day of December, 1890, Lovell endorsed on this policy a permit for Reese, the insured, to remove the stock of liquors to a storage house in rear of the original place, and mailed the said policy, thus endorsed, to the company for its approval. The company did approve the permit so endorsed by Lovell upon the said policy and returned it, with its approval, to Lovell, who delivered it to Reese. On the 7th of May, 1891, Reese assigned this policy to J. M. Hardin, the appellant, by a writing, witnessed by Lovell, who sent the said policy, so endorsed with the said assignment, to the Alexandria Insurance Company, who approved it and returned it to Lovell, who delivered it to said Hardin. Thus in May, 1891, the original policy became the

property of Hardin (the appellant) with the sanction of the company to the assignment and to the removal of the stock insured from the two-story frame house to the storage house in its rear. On or about 27th of July, 1891, Hardin removed the stock of liquors insured from the storage house to the "Intermont Hotel," and, through Lovell, obtained from the Alexandria Insurance Company its approval and permit to Hardin of this second removal. About the 31st of August, 1891, Hardin informed Lovell that he had removed the stock of liquors to the Summerfield House or building, and asked Lovell to give him a permit or approval of the said transfer. Lovell told Hardin that as there were so many endorsements on the policy, it would be better to cancel it and take out a new policy for the return premium. Hardin was in a great hurry and told Lovell to do that. Lovell called Hardin back and told him to wait till he could fill in the receipt for the return premium, when Hardin said to Lovell: "Show me where to sign; you can fill in the amount." This Lovell did, and filled in $5, according to the *short rate* table; though he wrote at the foot of the said receipt for the return premium, "cancelled *pro rata* and new policy to be issued." Lovell then sent this original policy, so endorsed, to the Alexandria Insurance Company, who kept or suppressed it; and, instead of issuing a duplicate of the original policy as Hardin expected, issued a new and *different* policy according to the *short rate* table (while the original policy was according to the *pro rata*) for $1,000 on stock, which device and arrangement shortened the life of the policy to the 9th of October, 1891, instead of the 25th of November, 1891, and made it expire on the 9th of October, 1891.

This new policy was sent by the Alexandria Insurance Company to Lovell, but it never came to the hands or to the sight of Hardin. Hardin was absent in Norfolk when it came to Lovell, and Lovell left it, he says, at the Summerfield House, which was not Hardin's place of abode and in which he had no concern except the liquor stored there.

Hardin contends and deposes that he had only $882 in stock, and had not asked for insurance of $1,000, nor for over $750. On the 26th day of October, 1891, the Summerfield House was burned down, and in it the stock of liquors was destroyed of the value of $882.

The Alexandria Insurance Company, on demand, refused to pay the insurance, and denied all liability on the ground that the new policy expired on the 9th of October, 1891, and that no policy existed on the 26th of October, 1891. Had the new policy (issued by the insurance company but never delivered to Hardin) been a duplicate of the original (as Hardin claimed and expected), at *pro rata* rates, as the original was, it would not have expired till after the 26th of October, 1891, the date of the fire, and it would have covered the loss. It was wholly different from the policy which Lovell suggested to Hardin to obtain, because of the numerous endorsements on the original, the only reason assigned by Lovell and urged upon Hardin for cancelling the original policy and taking out a new one. This advice and this reason was the only cause of Hardin's agreeing to Lovell's suggestion, and he reasonably understood and relied upon Lovell that the new policy was to be the same as the one surrendered, for convenience only, because the original was covered all over by oft-repeated endorsements. The question now is, who is responsible for this change of policies—a change certainly not intended or expected by Hardin? The responsibility lies between the Alexandria Insurance Company and Lovell, on whom Hardin relied as the authorized agent or representative of the company. Either Lovell misinformed the company as to the terms of the new policy asked for by Hardin, and did not apprise the company of the reason why Hardin asked for a new policy, and that, too, on Lovell's suggestion and the reason for the suggestion, or else the company deliberately ignored the understanding between Lovell and Hardin, and arbitrarily issued the new policy to suit itself, at short table rates, instead of according to the memorandum

endorsed upon the original policy by Lovell, "Cancelled *pro rata*, and new policy to issue." The new policy, as written, was never contemplated, nor asked for, by Hardin. It was the device of the company or of Lovell. If it was the work of the company, it is responsible for destroying Hardin's security for $750 insurance upon the stock insured. If it was Lovell's act, and he misled the company, whose medium he was, it is liable and responsible for his acts in the conduct of its business. Both Lovell and the company claim that the company had never issued a commission to him as their agent, and that he was acting only as a broker. But this is playing upon words, and the whole testimony and the transaction itself, show that he was held out to the public as the agent or intermediate of the company, by and through whom all transactions with the company by parties seeking or having insurance must pass, subject to approval. The insurance company furnished him with all needful papers and blanks, responded to his acts, approved permits of removal given by him, and paid his rent, thereby treating and holding him out as agent to the public, who had the right to deal with the company by and through him as their agent in fact. Otherwise the public would be misled and defrauded by either, or by a combination of both.

The Alexandria Insurance Company must be held responsible for the loss occasioned to Hardin by a change of his policy of insurance, which was made by it, and not intended or contemplated by him, and brought about, either by the agent Lovell, or by the act of the company, of its own motion, or by a combination of the company and Lovell.

The decree appealed from is erroneous, and must be annulled and reversed, and this court, proceeding to render such decree as the circuit court of Wise county should have entered in the cause, will enter a decree for the appellant, according to the prayer of his bill, which the circuit court erred in dismissing.

DECREE REVERSED.